UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| LOREN KASTNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 09-cv-02512-STA-dkv |
| | ) |
| EXXON MOBIL CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant ExxonMobil Corporation's Motion for Summary Judgment (D.E. # 12) filed on October 1, 2010. Plaintiff Loren Kastner filed a Response to the Defendant's Motion for Summary Judgment (D.E. # 13) on October 28, 2010. Defendant, upon receiving leave of this Court, then filed a Reply Brief in Support of its Motion for Summary Judgment (D.E. # 17) on November 11, 2010. For the reasons set forth below, the Motion for Summary Judgment is **GRANTED**.

### BACKGROUND

Plaintiff Loren Kastner ("Plaintiff") filed a Complaint for Damages in the Circuit Court of Tennessee for the Thirtieth Judicial District at Memphis. The cause of action alleged in the Complaint is "Negligence, Gross Negligence or Wilful, Reckless Disregard of Duty to Provide Security." Compl., 3. ExxonMobil Corporation ("Defendant") filed a Notice of Removal pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, which removed this action to the United States District Court for the Western District of Tennessee, Western Division. (D.E. # 1.)

1

The following facts are undisputed for purposes of this Motion unless otherwise noted. On August 13, 2008, at approximately 8:00 p.m., Plaintiff went to the ExxonMobil Tiger Mart ("Tiger Mart") at 1375 North Germantown Parkway, Memphis, Tennessee. Def.'s Statement of Facts ¶ 1. An unknown male approached Plaintiff outside the store, apparently asking Plaintiff for money. (*Id.* ¶ 2.) Plaintiff "kind of waved [the unknown] male off." (*Id.*) After Plaintiff entered the Tiger Mart, he went into the restroom. (*Id.* ¶ 3.) While inside the restroom, Plaintiff "heard some loud voices outside, sounded – sounded threatening a little bit, then [he] didn't hear anything. And all of a sudden, somebody was outside banging on the door, not happy sounding, you know." (*Id.*) After Plaintiff finished in the restroom, he came out and asked the Tiger Mart store clerk if the person who was banging on the restroom door was the person who had approached the Plaintiff outside. (*Id.* ¶ 4.) The clerk responded that it was. (*Id.*) Plaintiff then asked the store clerk if he wanted to go ahead and "call the cops on this guy[.]" (*Id.* ¶ 5.)

At that point, the unknown male approached the Plaintiff and asked the Plaintiff if he was "telling on" him. (*Id.* ¶ 6.) Plaintiff responded affirmatively. (*Id.* ¶ 7.) The unknown male asked why. (*Id.*) Plaintiff responded, "[b]ecause you are begging for money, and you are all violent sounding and everything. You know, you need to stop what you are doing. You probably should leave because he is going to be calling the cops here in a second. . . ." (*Id.*) Plaintiff then told the unknown male words to the effect of "get a job." (*Id.* ¶ 8.)

The police were called. (*Id.* ¶ 9.) The Plaintiff is not sure of exactly when the police were called. (*Id.* ¶ 9.)

According to the Plaintiff, the unknown male then became "very close in [Plaintiff's] face." (*Id.* ¶ 10.) Plaintiff says he "stood there. [He] didn't back up. [He] didn't move forward.

2

[He] wasn't aggressive." (*Id.*) The unknown male started walking out of the store, then turned around and came toward the Plaintiff. (*Id.* ¶ 11.) The unknown male then threw his sunglasses at the Plaintiff, cutting Plaintiff's left cheek. (*Id.*) Then the unknown male began "coming towards [the Plaintiff]. So [the Plaintiff] reared back . . . and punched [the unknown male] directly in the nose." (*Id.* ¶ 12.) A struggled ensued. (*Id.* ¶ 13.) Plaintiff does not know how long the incident lasted. (*Id.* ¶ 14.)

According to Plaintiff, after the incident, he talked with four of Defendant's employees in the store. (*Id.* ¶ 15.) "At least a couple of [Defendant's employees] said, Yeah, he has come in and bought cigarettes, and one [employee] in particular – it was a lady – said, Yeah, I think he is on something. He is out here quite a bit, you know, hanging out in front of the store." (*Id.*) Additionally, according to Plaintiff, one of Defendant's employees, a female, told him she thought the unknown male was probably on methamphetamine. (*Id.* ¶ 16.) This employee did not tell Plaintiff how she knew the unknown male was "on meth." (*Id.*) Plaintiff stated that he would not know if someone was "on meth" as he does not know how someone who is "on meth" acts. (*Id.* ¶ 17.)

Plaintiff does not know how often the unknown male who assaulted him was present at this Tiger Mart. (*Id.* ¶ 19.) Furthermore, Plaintiff has no personal knowledge about whether the unknown male had been verbally or physically aggressive toward any other Tiger Mart employee. (*Id.* ¶ 20.) Plaintiff does not know whether the unknown male had ever attacked anyone at this Tiger Mart location before or anything like that ever happening. (*Id.* ¶ 21.) No employee of the Defendant, nor anyone else, has told Plaintiff anything about any other such attack by the unknown male. (*Id.* ¶ 22.)

Memphis Police Department records reflect three reports of criminal incidents occurring at this Tiger Mart location during the one-year period preceding the date of the incident involved in this case--August 13, 2008. (*Id.* ¶ 23.)

The first of the three reports is a report of a theft from a motor vehicle dated November 21, 2007. (*Id.* ¶ 24.) The November 21, 2007 Memphis Police Department Report notes that the victim filled her car with gas and then walked inside the store to make another purchase, leaving her purse unattended in the front seat of her unlocked car. (*Id.* ¶ 25.) When she returned to her car a few minutes later, her purse was missing. (*Id.*)

The second of the three reports is a report of vandalism dated January 11, 2008. (*Id.* ¶ 26.) The January 11, 2008 Memphis Police Department Report reflects that a vehicle was observed driving over the curb at the Tiger Mart store onto the grass and destroying a portion of the grass belonging to the Tiger Mart store. (*Id.* ¶ 27.)

The third of the three reports is a report of "other theft/non-specific" dated June 15, 2008. (*Id.* ¶ 28.) The June 15, 2008 Memphis Police Department Report reflects that a person entered the Tiger Mart, asked an employee to turn on the gas pump for her, left a debit card with the employee, and said she would return to pay for the gas. (*Id.* ¶ 29.) However, after filling her vehicle with gasoline, the person drove off without paying. (*Id.*)

None of these incidents reported by the Memphis Police Department involved any personal injury or threat of personal injury. (*Id.* at 30.)

Plaintiff admitted every fact listed above; however, in Plaintiff's Response to Defendant's Motion for Summary Judgment he included a Statement of Additional Material Facts. The

Defendant objects to each of the Plaintiff's additional facts as not material. Def.'s Resp. to Pl.'s Statement of Additional Material Facts ¶ 1-10. The additional facts are listed below.

Plaintiff contends that Defendant provides all of its employees with a copy of its "Emergency Preparedness Guide" ("EPG"),[1] Pl.'s Statement of Additional Material Facts ¶ 1, and that Defendant's employees are required to "read and understand the guide."[2] (*Id.* ¶ 2.) Detailed within the EPG is Defendant's "Loss Prevention System" ("LPS"). (*Id.* ¶ 3.) The LPS "is a system to prevent or reduce incidents using behavior-based tools and proven management techniques." (*Id.*) Plaintiff highlights that the LPS "has four principles that are essential to its success[, and] [a]dherence to these principles is an absolute prerequisite for improving safety performance." (*Id.* ¶ 4.) Pursuant to Principle 3, "(t)he majority of time spent on LPS tools and activities should be proactive. In other words, most LPS efforts should focus on identifying and eliminating hazards and risks before an injury or other type of incident takes place, not after the fact." (*Id.* ¶ 5.)

Additionally, within the LPS is a section called the "Safe Performance Self-Assessment" ("SPSA"). (*Id.* ¶ 6.) The first step of the SPSA is to "ASSESS the risk!"[3] (*Id.* ¶ 6.) The "second step of the SPSA process is to 'ANALYZE how to reduce the risk!' The individual should evaluate each risk identified during the assessment process to ensure appropriate

---

[1] Defendant states that "[n]owhere on the cover of ExxonMobil's Emergency Preparedness Guide [], or elsewhere therein, is it stated that the Guide is provided to all ExxonMobil employees." Def.'s Resp. to Pl.'s Statement of Additional Material Facts ¶ 1.

[2] The information quoted in this sentence is not within the record of this case.

[3] The information quoted in this sentence is not within the record of this case.

safeguards are in place to control the hazard." (*Id.* ¶ 7.) The third step is to "ACT to ensure safe operations!" (*Id.* ¶ 8.)

Plaintiff also submits that according to the "Your Responsibilities" section of the Loss Prevention Handbook, employees are to "(e)nforce store policies on loiterers."[4] (*Id.* ¶ 9.) Moreover, that employees are to "[w]atch out for people standing around by the pumps or near pay phones. . . . If there are suspicious people hanging around the store during your shift, call the police and ask them to drive by for a courtesy check." (*Id.*) Additionally, Plaintiff states that according to the "Robbery: Prevention is Half the Battle" section of the Loss Prevention Handbook, employees are to "(k)eep a sharp lookout for anyone who seems to be loitering around the store. If you notice someone hanging around, try to make eye contact. If the person does not leave, call the police and ask for a patrol check."[5] (*Id.* ¶ 10.)

In Defendant's Motion, Defendant argues that, in Tennessee, it is well-settled that the issue of whether a defendant owes a plaintiff a duty of care is a question of law to be determined by the court. Defendant states that it is also well-settled that a premises owner has no duty to protect its customers from unforeseeable harm. Defendant further contends that, in this case, the harm that occurred to Defendant was not foreseeable and that there are no disputes of material fact to the contrary. Consequently, Defendant submits that absent a duty owed by Defendant to

---

[4] Defendant notes that the language quoted in ¶ 9 of Plaintiff's Statement of Additional Material Facts appears in ExxonMobil's Robbery & Theft Deterrent Kit, Trainers Book, not in the Loss Prevention Handbook. Def.'s Resp. to Pl.'s Statement of Additional Material Facts ¶ 9.

[5] Defendant notes that the language quoted in ¶ 10 of the Plaintiff's Statement of Additional Material Facts appears in ExxonMobil's Memphis CORS (company-operated retail stores) "What to do if . . ." notebook, not in the Loss Prevention Handbook. Def.'s Resp. to Pl.'s Statement of Additional Material Facts ¶ 10.

Plaintiff, Plaintiff has no cause of action against Defendant for negligence, and Defendant is entitled to entry of summary judgment in its favor.

Plaintiff, on the other hand, argues that summary judgment is not appropriate because the Defendant assumed the duty to provide a safe environment for its invitees. The Plaintiff submits that in determining the duty that exists, the foreseeability of harm and the gravity of the harm must be balanced against the burden imposed on the business to protect against that harm. Here, the Plaintiff argues that the harm was foreseeable and the magnitude of the burden on the Defendant to follow its own policies and procedures is minimal; whereas, the harm to the Plaintiff "was severe." Following, the Plaintiff argues that the liability of the proprietor of a place of business, to which the public is invited, is based upon the duty to keep his premises in a reasonable safe condition for all persons lawfully on his premises. Plaintiff submits that Defendant clearly had a duty to keep its premises in a reasonably safe condition for all persons who are lawfully on its premises and that the Defendant breached its duty by failing to follow its own policies and procedures. Further, Plaintiff submits that the breach was the proximate cause of the attack on the Plaintiff and the requisite damages he ultimately suffered. Consequently, Plaintiff submits that summary judgment is not appropriate in this case.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that the

> court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[6]

---

[6] Fed. R. Civ. P. 56(a). The new text of Rule 56(a) became effective December 1, 2010. According to the official comments following Rule 56, "[t]he standard for granting summary judgment remains unchanged."

In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.[7] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[8] It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[9] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[10] When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[11]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[12] In this Circuit, "this requires the nonmoving party

---

[7] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[8] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[9] *Matsushita*, 475 U.S. at 586.

[10] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[11] *Id*. at 251-52 (1989).

[12] *Celotex*, 477 U.S. at 322.

to 'put up or shut up' [on] the critical issues of [his] asserted causes of action."[13] Finally, the "judge may not make credibility determinations or weigh the evidence."[14]

## ANALYSIS

Under the *Erie* doctrine, in cases where a federal court exercises jurisdiction by virtue of the diversity of the parties, the federal court is bound to apply the substantive law of the forum state as if the action had been brought in a state court of the jurisdiction where the federal court is located.[15] The federal court must apply the law of a state as it has been determined by the highest court of the state.[16] When the highest court of the state has not answered a particular question of law, the federal court must discern or predict how the state courts would respond if confronted with the same question.[17] The federal court must ascertain from all available data what the law is and apply it.[18] In the absence of any indication that the state's highest court would adopt a rule contrary to the rule announced in an intermediate appellate court, a federal court is not free to

---

[13] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[14] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[15] *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938); *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 723 (6th Cir. 2007).

[16] *Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003).

[17] *Hartford Fire Ins. Co. v. Lawrence, Dykes, Goodenberger, Bower & Clancy*, 740 F.2d 1362, 1365 (6th Cir. 1984); *Clutter v. Johns-Manville Sales Corp.*, 646 F.2d 1151, 1153 (6th Cir. 1981).

[18] *Bailey v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir. 1985).

ignore the announcement of a state appellate court on matters of state law.[19] In this case, the parties do not dispute that the substantive law of Tennessee applies.

In Tennessee, a plaintiff seeking recovery under a premises liability theory must establish the elements of negligence. To establish negligence, a plaintiff must prove: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause."[20] In order for an owner or operator of premises to be held liable for negligence in allowing a dangerous or defective condition to exist on its premises, a plaintiff must also establish: "(1) the condition was caused or created by the owner, operator, or his agent, or (2) if the condition was created by someone other than the owner, operator, or his agent, that the owner or operator had actual or constructive notice that the condition existed prior to the accident."[21]

In this case, the focus of Defendant's Motion is on the duty of care–the first element in establishing negligence. The question of whether a defendant owes a plaintiff a duty is a question of law for the court to determine.[22] The Tennessee Supreme Court has defined the duty of care as "the legal obligation owed by defendant to plaintiff to conform to a reasonable person standard of care for protection against unreasonable risks of harm."[23]

---

[19] *Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676 (6th Cir. 2000).

[20] *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 355 (Tenn. 2008).

[21] *Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004).

[22] *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 894 (Tenn. 1996).

[23] *Id.*

More specifically, and importantly in this case, the Tennessee Supreme Court has set forth the following principles to be considered in determining that duty in the context of third-party criminal acts:

> A business ordinarily has no duty to protect customers from the criminal acts of third parties which occur on its premises. The business is not to be regarded as the insurer of the safety of its customers, and it has no absolute duty to implement security measures for the protection of its customers. However, a duty to take reasonable steps to protect customers arises if the business knows, or has reason to know, either from what has been or should have been observed or from past experience, that criminal acts against its customers on its premises are reasonably foreseeable, either generally or at some particular time.[24]

In applying these guidelines, courts must balance the foreseeability of harm and gravity of harm against the commensurate burden imposed on the business to protect against the harm.[25]

Additionally, the Tennessee Supreme Court has explained that:

> As a practical matter, the requisite degree of foreseeability essential to establish a duty to protect against criminal acts will almost always require that prior instances of crime have occurred on or in the immediate vicinity of defendant's premises. Courts must consider the location, nature, and extent of previous criminal activities and their similarity, proximity, or other relationship to the crime giving rise to the cause of action.[26]

No material facts are in dispute in this case. The issue in this case is whether the Defendant could reasonably have foreseen the injury to the Plaintiff, thereby establishing a duty.

In its Motion, the Defendant shows, and the Plaintiff does not dispute, that in the year prior to this incident, only three criminal incidents took place at this location. As detailed above, these three incidents include: 1. theft from a motor vehicle, 2. vandalism, and 3. a person driving

---

[24] *Id.* at 902.

[25] *Id.*

[26] *Id.*

11

off without paying for gas. None of these incidents involved any personal injury or threat of personal injury. Consequently, the Defendant contends that they could not have reasonably foreseen the injury to the Plaintiff by the unknown male.

Plaintiff, on the other hand, points the Court to a few pieces of evidence to demonstrate that this assault on the Plaintiff was foreseeable. First, Plaintiff states that "[Plaintiff] was told by Exxon employees that the unknown assailant was around that store often panhandling and the employees believed he was under the influence of Methamphetamine."[27] Second, Plaintiff states that "[i]t is clear from the testimony of the Plaintiff that [Defendant's] employees were familiar with [Plaintiff's] assailant and the fact that the assailant was often at the store loitering, in violation of [Defendant's] policies and procedures."[28] Third, Plaintiff states that "in spite of the fact that [Defendant's] policies and procedures prohibit loitering and require employees to call the police when a loiterer is present," Defendant's employees on duty at the time of the assault, "failed to comply with [Defendant's] policies and procedures by calling the police."[29] Fourth, Plaintiff contends that "[he] asked the ExxonMobil clerk on duty to call the police prior to the assault, however, the ExxonMobil clerk on duty failed to comply with [Plaintiff's] request to have the police called."[30]

According to the parties' undisputed statement of facts, however, the Court finds some of Plaintiff's arguments to be misstated and/or incomplete. First, according to the parties'

---

[27] Pl.'s Resp. to Def.'s Mot. Summ. J., 5.

[28] Pl.'s Resp. to Def.'s Mot. Summ. J., 5.

[29] Pl.'s Resp. to Def.'s Mot. Summ. J., 6.

[30] *Id.* at 6.

12

undisputed statement of facts, a couple of the Defendant's employees said the unknown male had previously come in and bought cigarettes, and one female employee said she thought the unknown male was "on something. He is out here quite a bit, you know, hanging out in front of the store." Secondly, the Court finds it important to note that the Plaintiff did not know how often the unknown male was present at this Tiger Mart, whether the unknown male had been verbally or physically aggressive with any of the Tiger Mart employees, whether the unknown male had ever attacked anyone else at this location before, whether anything like this had ever happened before, or whether anyone has told the Plaintiff anything about any other attack by this unknown male. And third, according to the parties' undisputed statements of facts, the store clerk did call the police. The Plaintiff was just not sure of exactly when the police were called.

 Reviewing these facts in the light most favorable to the Plaintiff, this Court finds that the assault on the Plaintiff by the unknown male was not reasonably foreseeable by the Defendant. Not one of the three incidents reported by the Memphis Police Department for this location for the year prior to this incident involved any personal injury or threat of personal injury. Moreover, there is no evidence that the unknown male had ever been aggressive toward another Tiger Mart customer or anyone else on the Defendant's premises, much less assaulted a customer or anyone else present at this Tiger Mart. Therefore, the Court finds that the assault on the Plaintiff by the unknown male was not foreseeable, and, as such, the Defendant owed no duty to the Plaintiff. Consequently, the Court finds the Plaintiff unable to establish an essential element of his negligence claim.

## CONCLUSION

For the reasons set forth above, Defendant ExxonMobil Corporation's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: December 13th, 2010.
